## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on November 13, 2020**

### UNDER SEAL

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. _____** |
| | : | |
| **v.** | : | |
| | : | |
| **MAHMOUD AL HAFYAN,** | : | **18 U.S.C. § 371** |
| a/k/a Abu Abdo Al-Homsi, | : | **(Conspiracy to Commit an Offense Against** |
| | : | **the United States)** |
| **Defendant.** | : | |
| | : | **18 U.S.C. § 666(a)(1)(A)** |
| | : | **(Theft Concerning Programs Receiving** |
| | : | **Federal Funds)** |
| | : | |
| | : | **18 U.S.C. § 1031** |
| | : | **(Major Fraud Against the United States)** |
| | : | |
| | : | **18 U.S.C. § 1519** |
| | : | **(Falsification of Records)** |
| | : | |
| | : | **18 U.S.C. § 2** |
| | : | **(Aiding and Abetting; Causing an Act to be** |
| | : | **Done)** |
| | : | |

### I N D I C T M E N T

The Grand Jury charges that:

### COUNT ONE
### (Conspiracy to Commit an Offense Against the United States)

At all times material to this Indictment:

### Introduction

1.    The Syrian Arab Republic ("Syria") was involved in a civil war since 2011. The

war resulted in a humanitarian crisis, and the U.S. government spent over $12 billion on

humanitarian assistance to conflict-affected Syrians from the beginning of the conflict until 2020. As described further herein, between 2015 and 2018 in Idlib, Syria, more than $9 million of that U.S.-funded humanitarian aid was illegally diverted by Defendant, MAHMOUD AL HAFYAN, and his coconspirators from conflict-affected persons to armed combatant groups, including to the terrorist organization known as the Al-Nusrah Front ("ANF"), as well as to AL HAFYAN himself and his coconspirators.

### The Al-Nusrah Front

2.      ANF was a terrorist organization based in Syria, which was most directly an extension of al-Qaida in Iraq ("AQI"), itself a terrorist organization based in Iraq. Veterans of AQI crossed the border into Syria to join the fighting there and re-organized themselves as ANF. "al-Qa'ida" was an Arabic word that loosely translates as "the Base" and "Al-Nusrah" was an Arabic word that loosely translates as "the Support." ANF's primary objective was the overthrow of the secularist regime of President Bashar al Assad. At all times relevant to this Indictment, it was known within Syria that ANF committed numerous humanitarian atrocities in Syria during the Syrian civil war, to include mass executions of civilians, suicide bombings, and kidnappings. ANF publicly admitted to such conduct.

3.      On December 11, 2012, the United States Secretary of State amended its prior designation of al-Qa'ida as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act ("INA"), and as a Specially Designated Global Terrorist ("SDGT") under section 1(b) of Executive Order 13224, to add ANF as an alias of al-Qa'ida. On May 15, 2014, in response to the evolving nature of the relationships between ANF and al-Qa'ida, the Secretary of State separately designated ANF as an independent FTO and SDGT. In January 2017, the ANF announced that it had merged with four smaller Islamist factions to form the group

Hay'at Tahrir al-Sham ("HTS"). HTS was a vehicle to advance the ANF's position in the Syrian uprising and to further its own goals. At all times relevant to this Indictment, ANF was a designated FTO and SDGT.

4.     During the time relevant to this Indictment, ANF also operated through subunits or affiliates, including Jund al-Aqsa ("JAA"), a terrorist group in northern Syria that primarily operated in Idlib and Hama provinces.

5.     As used in this Indictment, ANF refers to Al-Nusrah Front and all its aliases and affiliates.[1]

## USAID and Humanitarian Relief in Syria

6.     The United States Agency for International Development ("USAID") was an independent federal government agency that received foreign policy guidance from the Secretary of State. USAID was the principal U.S. federal agency that extended assistance to countries recovering from disaster, trying to escape poverty, and engaging in democratic reforms. USAID worked to support long-term and equitable economic growth and advance the United States' foreign policy objectives by supporting economic growth, agricultural development, global health, conflict prevention, and development relief. USAID's headquarters was located in Washington, D.C.

---

[1]     During the time relevant to this Indictment, ANF was also known by numerous aliases, to include: Jabhat al-Nusrah; Jabhet al-Nusra; The Victory Front; Al-Nusrah Front for the People of the Levant; Al-Nusrah Front in Lebanon; Support Front for the People of the Levant; Jabaht al-Nusra li-Ahl al-Sham min Mujahedi al-Sham fi Sahat al-Jihadb; Jabhat Fath al Sham; Jabhat Fath al-Sham; Jabhat Fatah al-Sham; Jabhat Fateh al-Sham; Fatah al-Sham Front; Fateh Al-Sham Front; Conquest of the Levant Front; The Front for liberation of al Sham; Front for the Conquest of Syria/the Levant; Front for the Liberation of the Levant; Front for the Conquest of Syria; Hay'at Tahrir al-Sham; Hay'et Tahrir al-Sham; Hayat Tahrir al-Sham; Hay'at Tahrir al-Sham; Assembly for the Liberation of Syria; Assembly for Liberation of the Levant; Liberation of al-Sham Commission; Liberation of the Levant Organisation;, Tahrir al-Sham; and Tahrir al-Sham Hay'at.

7.      Since 2012, USAID provided cross-border humanitarian assistance to Syrian internally displaced persons and other conflict-affected Syrians, including food, non-food items, and medical supplies. These programs were contracted by USAID to various U.S. and international non-governmental organizations ("NGOs"), which were based in countries neighboring Syria, including Turkey and Jordan, and were responsible for delivering the U.S.-funded aid to the conflict-affected Syrians.

8.      USAID's Office of Food for Peace ("FFP") identified geographic and humanitarian needs, and broadly managed and oversaw a portion the NGOs' implementation of the USAID programs. FFP-related programs for northern Syria included the procurement and delivery of food items, food vouchers, and flour for distribution (generally, "food kits") to conflict-affected Syrians.

9.      NGO-1 is an American non-profit, NGO based in Maryland. An NGO is a nonprofit organization independent of governments and international governmental organizations, although funded by governments, which aims to improve the lives of other people through humanitarian services, among other things.

10.     In any one-year period from January 29, 2015, through on or about February 22, 2018, NGO-1 received more than $10,000 in benefits from the United States government under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance.  Specifically, USAID awarded NGO-1 two cooperative agreements totaling more than $122 million, which were initially awarded for the time period of on or about January 29, 2015, through on or about November 14, 2018 (the "USAID awards"). The purpose of the USAID awards was to provide money for NGO-1 to obtain food kits for conflict-affected Syrians. The awards were suspended on or about February 22, 2018, after USAID learned of AL HAFYAN's and his coconspirator's conduct.

11.     As part of and under the USAID awards, NGO-1 procured food from local vendors in Turkey, arranged them into the food kits, and transported the kits to Syria for distribution to conflict-affected Syrians. The food kits were property owned by or under the care, custody, or control of NGO-1.

12.     As approved by USAID, NGO-1 identified certain guidelines to determine which conflict-affected Syrians were eligible for food kits, including Syrians who had women or children as head of household, chronic disease affliction, displacement within the last six months, and low income level (hereinafter "beneficiaries"). Based on these guidelines, NGO-1 created a list of the beneficiaries to whom its staff in Syria was supposed to distribute the food kits. Specifically, under the guidelines set by NGO-1 and approved by USAID, beneficiaries were to receive a certain number of food kits relative to their family size.

13.     Additionally, under these guidelines, beneficiaries were required to sign their names on a beneficiary log each time they received a food kit from NGO-1. These beneficiary logs were maintained by NGO-1 and at times sent from NGO-1's office in Syria to NGO-1's regional headquarters in Turkey in order to substantiate to NGO-1 and USAID the distribution of food kits to conflict-affected Syrians, in accordance with USAID's requirements. USAID was able to access the beneficiary logs in order to verify distribution of the food kits consistent with the terms of the USAID awards.

14.     NGO-1 had various fraud prevention mechanisms in place. Specifically, NGO-1 instructed its employees to report any fraud in the distribution program to its regional headquarters in Turkey. Further, NGO-1 had an internal documentation system through which fraud concerns could be documented by NGO-1's employees and elevated to management at NGO-1. NGO-1 also had a hotline phone number available to its employees through which they could report fraud or

abuse. However, due to the remote location of NGO-1's staff in Syria and the actions of the co-conspirators, many Syrian-based NGO-1 employees were unable to utilize these fraud prevention mechanisms.

### Conspirators

15.    Defendant, MAHMOUD AL HAFYAN, also known as Abu Abdo Al-Homsi, was a Syrian national. AL HAFYAN had no known residence in any particular state or district of the United States. AL HAFYAN, an agent of NGO-1 authorized to act on NGO-1's behalf, was the head of NGO-1's regional office in Syria, where he managed approximately 160 employees of NGO-1.

16.    Coconspirator 1 was a Syrian national. Coconspirator 1 was an employee of NGO-1 located at its regional office in Syria. Coconspirator 1, an agent of NGO-1 authorized to act on NGO-1's behalf, was the Food Security Field Coordinator and was responsible for maintaining NGO-1's warehouse at that office. In this role, Coconspirator 1 directly managed several other employees of NGO-1, all of whom were involved in distribution of food kits from NGO-1's warehouse. Coconspirator 1 reported directly to AL HAFYAN.

17.    Coconspirator 2 was a Syrian national. Coconspirator 2, an agent of NGO-1 authorized to act on NGO-1's behalf, was an employee of NGO-1 located at its regional office in Syria. Coconspirator 2 was the Logistics Coordinator at NGO-1's warehouse at NGO-1's regional office. In this role, Coconspirator 2 oversaw the provision of food kits from the warehouse to the teams of employees who delivered the kits to the Syrian beneficiaries in different Syrian villages. Coconspirator 2 reported directly to Coconspirator 1. Coconspirator 2 was a relative of AL HAFYAN.

## **The Conspiracy and Its Objects**

18.     From on or about January 29, 2015, through on or about February 22, 2018, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, knowingly combined, conspired, confederated, and agreed together and with each other to commit crimes against the United States and its agency, USAID, that is: (i) to embezzle, steal, obtain by fraud, or otherwise without authority knowingly convert to the use of another property, that is, food kits, that were owned by, or was under the care, custody, or control of, NGO-1, in violation of 18 U.S.C. § 666; (ii) to execute, or attempt to execute, a scheme or artifice with the intent to (a) to defraud the United States, and (b) to obtain money or property by means of false or fraudulent pretenses, representations, or promises, in a grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, where the value of such grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, or any constituent part thereof, was $1,000,000 or more, in violation of 18 U.S.C. § 1031; and (iii) to knowingly alter, destroy, mutilate, conceal, cover up, falsify, or make a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States, or in relation to or contemplation of any such matter or case, in violation of 18 U.S.C. § 1519.

## Manner and Means of the Conspiracy

19.    It was part of the conspiracy that AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, would provide and attempt to provide property, that is, food kits funded by USAID, obtained from NGO-1 and intended for the benefit of conflict-affected Syrians, to ANF, armed combatant groups, and the coconspirators themselves, none of whom were eligible to receive the property from NGO-1.

20.    It was further a part of the conspiracy that AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, would:

    a.    Reduce the number of food kits that NGO-1 had instructed its staff to distribute to beneficiaries, so as to create a surplus of kits in NGO-1's Syrian warehouse.

    b.    Communicate with commanders from ANF and other armed combatant groups about the provision of food kits to these groups, and personally authorize the distribution of the surplus kits to members of ANF and other armed combatant groups, as well as to the coconspirators themselves.

    c.    Direct NGO-1's staff in Syria to create falsified beneficiary logs, which (a) did not include the names of members of ANF, other armed combatant groups, or the coconspirators who actually received food kits, (b) falsely inflated the number of kits received by the beneficiaries in order to make it appear that NGO-1 was dispersing kits according to NGO-1's guidelines, and (c) forged the signatures of the beneficiaries in order to make it appear that beneficiaries had in fact received the amount of kits required by NGO-1.

d. Send the falsified beneficiary logs, or portions thereof, from NGO-1's office in Syria to its regional headquarters in Turkey, as alleged evidence that the program was operating under NGO-1's distribution guidelines.

e. Order NGO-1's staff to falsify their reports to NGO-1's supervisors at the regional headquarters in Turkey, so as to prevent detection of the aforementioned diversion and fraud.

f. Threaten NGO-1's employees with reprisal from commanders of ANF and other armed combatant groups if the employees did not assist with this scheme or reported the aforementioned diversion or fraud to NGO-1's supervisors at the regional headquarters in Turkey.

## **Overt Acts**

21.    In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States, but within the extraterritorial jurisdiction of the United States:

a. Between on or about April 23, 2015, through on or about December 14, 2015, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, caused food kits obtained by NGO-1 for distribution to 124 beneficiaries in the village of Bweiti, Syria, to be diverted to the ANF, other armed combatant groups, and themselves.

b. Between on or about April 27, 2015, through on or about December 13, 2015, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, caused food kits obtained by NGO-1 for

distribution to 172 beneficiaries in the village of Lof, Syria, to be diverted to the ANF, other armed combatant groups, and themselves.

c.  Between on or about April 23, 2015, through on or about December 13, 2015, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, caused food kits obtained by NGO-1 for distribution to 15 beneficiaries in the village of Mazratt-Shoukh, Syria, to be diverted to the ANF, other armed combatant groups, and themselves.

d.  Between on or about April 29, 2015, through on or about December 13, 2015, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, caused food kits obtained by NGO-1 for distribution to 150 beneficiaries in the village of Salamin, Syria, to be diverted the ANF, other armed combatant groups, and themselves.

e.  Between on or about April 1, 2015, through on or about December 31, 2015, AL HAFYAN and others known and unknown to the Grand Jury, caused NGO-1's staff to falsify and forge beneficiary logs so that they purported to record distributions to beneficiaries in the villages of Bweiti, Lof, Mazratt-Shoukh, and Salamin, Syria, consistent with NGO-1's guidelines for distribution.

f.  In at least 2015 and 2016, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, directed employees of NGO-1 to forge the signatures of beneficiaries on the beneficiary logs required by NGO-1.

g.  In and around late 2015, AL HAFYAN directed Employee 1, an employee of NGO-1, to change a report that identified the distribution discrepancies between

the number of food kits being distributed in Syria as compared to the guidelines issued by NGO-1. Around the same time, AL HAFYAN further instructed NGO-1's employees responsible for monitoring distribution of food kits that they were never to report the real number of food kits distributed in Syria to NGO-1's regional headquarters in Turkey.

h. In 2016, AL HAFYAN directed Employee 1 to go to the office of Individual 3, then a commander of JAA. While there, Individual 3 threatened Employee 1 that wherever Employee 1 went, "they" would find him.

i. In 2016, AL HAFYAN ordered an employee of NGO-1 to deliver approximately 300 food kits obtained by NGO-1 to Individual 1, a commander of ANF.

j. Between on or about September 19, 2017, through on or about January 9, 2018, AL HAFYAN approved the diversion of approximately 6,843 food kits obtained by NGO-1 to Individual 1, a commander of ANF.

k. Between on or about September 25, 2017, through on or about December 9, 2017, AL HAFYAN approved the diversion of approximately 200 food kits obtained by NGO-1 to Individual 2, a commander of ANF.

l. Between on or about September 10, 2017, through on or about December 12, 2017, AL HAFYAN approved the diversion of approximately 365 food kits obtained by NGO-1 to Individual 3, a commander of JAA and later ANF.

m. Between on or about September 27, 2017, through on or about December 12, 2017, AL HAFYAN approved the diversion of approximately 315 food kits obtained by NGO-1 to Coconspirator 1, an employee of NGO-1.

n.  Between on or about September 10, 2017, through on or about January 4, 2018, AL HAFYAN approved the diversion of approximately 1,487 food kits obtained by NGO-1 to Individual 4, an employee of NGO-1 and a relative of AL HAFYAN.

22.    As a result of the conspiracy, between on or about January 29, 2015, and on or about February 22, 2018, AL HAFYAN and others known and unknown to the Grand Jury, diverted more than $9 million worth of food kits obtained by NGO-1 from the intended beneficiaries, Syrian-conflict affected persons, to the ANF, other armed combatant groups, and the coconspirators.

All in violation of Title 18, United States Code, Sections 2, 371, 666(a)(1)(A), 1031, 1519.

## COUNT TWO
### (Theft Concerning Programs Receiving Federal Funds)

23.    The Grand Jury re-alleges paragraphs 1 through 17 above as though specifically set forth herein.

24.    From on or about April 23, 2015, through on or about December 14, 2015, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1, knowingly embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to the use of any person other than the NGO-1 and intentionally misapplied, property valued at more than $5,000 owned by and under the care, custody, and control of NGO-1—that is AL HAFYAN, Coconspirator 1, Coconspirator 2, and

others known and unknown, diverted food kits obtained by NGO-1 for 124 beneficiaries in the village of Bweiti, Syria, to the ANF, other armed combatant groups, and themselves.

All in violation of Title 18, United States Code, Sections 2 & 666(a)(1)(A).

**COUNT THREE**
**(Theft Concerning Programs Receiving Federal Funds)**

25.     The Grand Jury re-alleges paragraphs 1 through 17 above as though specifically set forth herein.

26.     From on or about April 27, 2015, through on or about December 13, 2015, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1,knowingly embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to the use of any person other than NGO-1, and intentionally misapplied, property valued at more than $5,000 owned by and under the care, custody, and control of NGO-1—that is AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown, diverted food kits obtained by NGO-1 for 172 beneficiaries in the village of Lof, Syria, to the ANF, other armed combatant groups, and themselves.

All in violation of Title 18, United States Code, Sections 2 & 666(a)(1)(A).

## COUNT FOUR
### (Theft Concerning Programs Receiving Federal Funds)

27.     The Grand Jury re-alleges paragraphs 1 through 17 above as though specifically set forth herein.

28.     From on or about April 29, 2015, through on or about December 13, 2015, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1, knowingly embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to the use of any person other than NGO-1, and intentionally misapplied, property valued at more than $5,000 owned by and under the care, custody, and control of NGO-1—that is AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown, diverted food kits obtained by NGO-1 for 150 beneficiaries in the village of Salamin, Syria, to the ANF, other armed combatant groups, and themselves.

All in violation of Title 18, United States Code, Sections 2 & 666(a)(1)(A).

## COUNT FIVE
### (Theft Concerning Programs Receiving Federal Funds)

29.     The Grand Jury re-alleges paragraphs 1 through 17 above as though specifically set forth herein.

30.     From on or about September 19, 2017, through on or about January 9, 2018, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1, knowingly embezzled, stole, obtained by fraud, and otherwise

without authority knowingly converted to the use of any person other than NGO-1, and intentionally misapplied, property valued at more than $5,000 owned by and under the care, custody, and control of NGO-1—that is AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown, diverted food kits obtained by NGO-1 from the kits' beneficiaries, Syrian-conflict affected persons, to Individual 1, a commander of ANF.

All in violation of Title 18, United States Code, Sections 2 & 666(a)(1)(A).

## <u>COUNT SIX</u>
### (Theft Concerning Programs Receiving Federal Funds)

31.    The Grand Jury re-alleges paragraphs 1 through 17 above as though specifically set forth herein.

32.    From on or about September 25, 2017, through on or about December 9, 2017, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1, knowingly embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to the use of any person other than NGO-1, and intentionally misapplied, property valued at more than $5,000 owned by and under the care, custody, and control of NGO-1—that is AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown, diverted food kits obtained by NGO-1 from the kits' beneficiaries, Syrian-conflict affected persons, to Individual 2, a commander of ANF.

All in violation of Title 18, United States Code, Sections 2 & 666(a)(1)(A).

## COUNT SEVEN
### (Theft Concerning Programs Receiving Federal Funds)

33.    The Grand Jury re-alleges paragraphs 1 through 17 above as though specifically set forth herein.

34.    From on or about September 10, 2017, through on or about December 12, 2017, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1, knowingly embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to the use of any person other than NGO-1, and intentionally misapplied, property valued at more than $5,000 owned by and under the care, custody, and control of NGO-1—that is AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown diverted food kits obtained by NGO-1 from the kits' beneficiaries, Syrian-conflict affected persons, to Individual 3, a commander of JAA and later ANF.

All in violation of Title 18, United States Code, Sections 2 & 666(a)(1)(A).

## COUNT EIGHT
### (Theft Concerning Programs Receiving Federal Funds)

35.    The Grand Jury re-alleges paragraphs 1 through 17 above as though specifically set forth herein.

36.    From on or about September 27, 2017, through on or about December 12, 2017, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1, knowingly embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to the use of any person other than NGO-1, and intentionally misapplied, property valued at more than $5,000 owned by and under the care, custody, and control of NGO-1—that is AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown, diverted food kits obtained by NGO-1 from the kits' beneficiaries, Syrian-conflict affected persons, to Coconspirator 1, an employee of NGO-1.

All in violation of Title 18, United States Code, Sections 2 & 666(a)(1)(A).

## COUNT NINE
### (Theft Concerning Programs Receiving Federal Funds)

37.    The Grand Jury re-alleges paragraphs 1 through 17 above as though specifically set forth herein.

38.    From on or about September 10, 2017, through on or about January 4, 2018, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1, knowingly embezzled, stole, obtained by fraud, and otherwise

without authority knowingly converted to the use of any person other than NGO-1, and intentionally misapplied, property valued at more than $5,000 owned by and under the care, custody, and control of NGO-1—that is AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown, diverted food kits obtained by NGO-1 from the kits' beneficiaries, Syrian-conflict affected persons, to Individual 4, an employee of NGO-1 and a relative of AL HAFYAN.

All in violation of Title 18, United States Code, Sections 2 & 666(a)(1)(A).

## COUNT TEN
### (Major Fraud Against the United States)

39.     The Grand Jury re-alleges paragraphs 1 through 17 and 19 through 20 above as though specifically set forth herein.

### The Contract Award

40.     On or about January 29, 2015, the United States, through its agency USAID, in a procurement of services, awarded grant number FFP-G-15-00020 to NGO-1, the value of said grant being in excess of $1,000,000.

### The Scheme and Artifice

41.     Beginning on or about January 29, 2015, through on or about February 22, 2018, in connection with the foregoing procurement, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, devised a scheme and artifice to defraud the United States and to obtain property by means of false and fraudulent representations.

42.     It was part of the scheme and artifice to defraud the United States and to obtain money or property by means of false and fraudulent representations, that AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, would and

did divert and attempt to divert property, that is, food kits funded by USAID, obtained from NGO-1 and intended for the benefit of conflict-affected Syrians, to ANF, armed combatant groups, and the coconspirators themselves, none of whom were eligible to receive the property from NGO-1, all while representing to NGO-1 that the same property was provided to conflict-affected Syrians in accordance with NGO-1 and USAID's guidelines.

<u>**Execution of the Scheme and Artifice**</u>

43.     From on or about January 29, 2015, through on or about February 22, 2018, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1, knowingly executed and attempted to execute the scheme and artifice with the intent to defraud the United States and to obtain money or property by means of false and fraudulent representations.

All in violation of Title 18, United States Code, Sections 2 & 1031.

## COUNT ELEVEN
### (Major Fraud Against the United States)

44.    The Grand Jury re-alleges paragraphs 1 through 17 and 19 through 20 above as though specifically set forth herein.

### The Contract Award

45.    On or about August 15, 2017, the United States, through its agency USAID, in a procurement of services, awarded grant number OFDA-A-17-00057 to NGO-1, the value of said grant being in excess of $1,000,000.

### The Scheme and Artifice

46.    Beginning on or about August 15, 2017, through on or about February 22, 2018, in connection with the foregoing procurement, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, devised a scheme and artifice to defraud the United States and to obtain property by means of false and fraudulent representations.

47.    It was part of the scheme and artifice to defraud the United States and to obtain money or property by means of false and fraudulent representations, that AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, would and did divert and attempt to divert property, that is, food kits funded by USAID, obtained from NGO-1 and intended for the benefit of conflict-affected Syrians, to ANF, armed combatant groups, and the coconspirators themselves, none of whom were eligible to receive the property from NGO-1, all while representing to NGO-1 that the same property was provided to conflict-affected Syrians in accordance with NGO-1 and USAID's guidelines.

## Execution of the Scheme and Artifice

48.     From on or about August 15, 2017, through on or about February 22, 2018, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, being an agent(s) of NGO-1, knowingly executed and attempted to execute the scheme and artifice with the intent to defraud the United States and to obtain money or property by means of false and fraudulent representations.

All in violation of Title 18, United States Code, Sections 2 & 1031.

## COUNT TWELVE
### (Falsification of Records)

49.　　The Grand Jury re-alleges paragraphs 1 through 17 above as though specifically set forth herein.

50.　　Between on or about April 1, 2015, through on or about December 31, 2015, in an offense begun and committed in Syria, and elsewhere outside the jurisdiction of any particular state or district of the United States but within the extraterritorial jurisdiction of the United States, AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, did knowingly falsify records, that is, beneficiary logs purporting to record distributions to beneficiaries in the villages of Bweiti, Lof, Mazratt-Shoukh, and Salamin, Syria, with the intent to impede, obstruct, and influence the proper administration of a USAID grant program, a matter that AL HAFYAN, Coconspirator 1, Coconspirator 2, and others known and unknown to the Grand Jury, contemplated was within the jurisdiction of USAID, a department and agency of the United States.

All in violation of Title 18, United States Code, Sections 2 & 1519.


A TRUE BILL


_____
FOREPERSON


MICHAEL R. SHERWIN
MICHAEL R. SHERWIN
Acting United States Attorney
in and for the District of Columbia